Kxnsrzio, Judge,
delivered the opinion of the court:
The question before us in this civilian pay case is whether plaintiff’s geographical reassignment between installations of the National Aeronautics and Space Administration (NASA) was lawful. We are also confronted with the further question of whether his removal from the competitive Civil Service for refusing to accept the subject reassignment was supported by substantial evidence and not arbitrary, capricious, or grossly erroneous.
We hold for the Government. The reassignment was lawful and the removal supported by substantial evidence.
Plaintiff is a preference eligible veteran with a record of thirty years of service with the Government. Pie had worked for seven years at the Washington Headquarters of NASA when, on August 12,1971, he was notified of reassignment to the NASA Lewis Research Center in Cleveland, Ohio. Plaintiff was scheduled to retain the same grade and salary (GS-14, Step 7) in his new position. The notification advised that this was a direct reassignment based on agency needs, refusal of *287 which would result in separation from the service. There then followed this sequence of events:
August 24, 1971 — Plaintiff submitted his formal refusal of the proposed reassignment on the ground that he had not been informed of the real reasons for the tráHSÍGl'
September 8,1971 — NASA notified plaintiff .he would be removed from the service because of his refusal to accept reassignment.
September 20,1971 — Plaintiff complained in writing that, because he did not know the real reasons for his reassignment, he was not able adequately to reply to his notice of separation, and that his position in Cleveland would not be comparable to his current one.
October 7,1971 — NASA, having considered his arguments, notified plaintiff his actions nevertheless warranted removal.
November 3,1971 — Plaintiff’s government service was officially terminated.
December 7, 1971 — An Agency hearing examiner recommended that NASA reverse this decision and retain plaintiff on the ground that the proposed reassignment was unlawful because it constituted a reduction in rank and because plaintiff’s superior had no authority to order such a transfer.
December 22, 1971 — NASA Administrator James C. Fletcher advised plaintiff that he had not accepted the findings of the hearing examiner, and that he had sustained the agency action against plaintiff.[1]
April 21,1972 — The Appeals Examining Office of the Civil Service Commission (CSC) sustained NASA’s decision (against plaintiff).
July19,1972 — The CSC Board of Appeals and Review sustained the Appeals Examining Office decision (against plaintiff).
Plaintiff now comes to this court, challenging his administrative separation and asking for back pay from the time of his removal until the time of judgment.
*288 By Civil Service regulation, federal agencies are authorized to reassign employees under their jurisdiction. 5 C.F.R. § 385.102. It is well established- that agencies have wide discretion in exercising this authority. Urbina v. United States, 192 Ct. Cl. 815, 880-81, 428 F. 2d 1280, 1284 (1970). To sanction this administrative authority, the Federal Personnel Manual, chapter 751, subchapter 2-6, provides:
"When an agency has found it necessary to assign an employee to a position in a different geographical or organizational location, and the employee refuses to accept the new assignment, he may be separated for failure to accept the assignment. * * * Separation for failure to accept a new assignment is appropriate when the employee refuses a position change that would carry out the terms of an established rotation policy or refuses any other position change which the agency has determined would serve the best interests of the service. The action may not be taken to accomplish a reduction-in-force action.
We have on numerous occasions recognized the legitimacy of this discretionary sanction. Kingdom v. United States, 187 Ct. Cl. 518 (1969); Burton v. United States, 186 Ct. Cl. 172, 404 F. 2d 365 (1968), cert. denied, 394 U.S. 1002 (1969); Madison v. United States, 174 Ct. Cl. 985 (1966), cert. denied, 386 U.S. 1037 (1967), reh. denied, 388 U.S. 924 (1967).
Plaintiff contends his challenge to the exercise of this authority in the present case is governed by our decision in Schmidt v. United States, 145 Ct. Cl. 632 (1959). The court there held that an employee’s refusal to obey an administrative reassignment was not insubordination justifying his separation when the purpose of such reassignment was unlawful. Id. at 636.
Plaintiff here argues that the reassignment in question was unlawful on two counts. First, because the transfer would in effect have resulted in a reduction in rank constituting an “adverse [administrative] action” under the terms of the Veterans’ Preference Act (VPA), 5 U.S.C. §7512 (1970), and thereby entitling him to procedural safeguards which he did not receive. Secondly, his superior was unauthorized to direct the transfer to Cleveland.
We find both arguments to be without merit.
*289 In Schmidt, the court held that plaintiff’s allegation of a prima fade case of illegal reassignment merited further proceedings on the validity of such reassignment. However, in the present case plaintiff has clearly failed to make out a prima fade case that his transfer was unlawful.
The overriding criteria in determining comparability of positions in a reassignment are grade and pay. Kingdon v. United States, supra; see also McGucken v. United States, 197 Ct. Cl. 965, cert. denied, 408 U.S. 926 (1972). That plaintiff was scheduled to hold the same grade and draw the same pay in Cleveland as he did in Washington is undisputed.
Plaintiff’s argument that the reassignment was unlawful is based instead on the hearing examiner’s finding that a reduction in rank occurred because plaintiff’s role in the Lewis Eesearch Center hierarchy would have been inferior to the one he played at the Washington Headquarters.[2] On administrative review, this determination was rejected by NASA Administrator James C. Fletcher, who concluded that the reassignment was legitimately “motivated by NASA’s needs as matched by [plaintiff’s] skills.”
This administrative record falls far short of the prima facie claim of illegality raised in Schmidt, where plaintiff alleged he had been reassigned for political purposes. The NASA Administrator’s assessment of the comparative equality of employee positions within his own agency must be given great weight. This conclusion seems inescapable if the principle that agencies have wide discretion in exercising their reassignment authority is to have any meaning. Plaintiff’s burden in proving abuse of such discretion is a heavy one, and one which he fails to carry here by his reliance on the hearing examiner’s discredited findings. See Camero v. United States, 170 Ct. Cl. 490, 499-501, 345 F. 2d 798, 803-05 (1965).
Plaintiff now seeks to bolster the hearing examiner’s discredited findings by advancing purely subjective evaluations at oral argument of the comparative career-opportunity and prestige values of the Washington and Cleveland positions.
It is patently clear that plaintiff did not like the idea of *290 moving to Cleveland. He did not like the job description in Cleveland. In his own viewpoint, moving from the Agency’s national headquarters to a regional research center represented a bureaucratic step down.
But no one in the Government could ever be transferred if the measure for lawfulness of the move were whether the employee-was subjectively satisfied, i.e., felt it offered sufficient glamour and excitement, or feared transfer to the “boondocks.” The test cannot be who likes wide-open spaces as against who prefers Washington, D.C. Given that basis of operation, Government could not function. Congress and the CSC never intended the transfer of Government employees to be dictated by their personal likes and dislikes. This court has already recognized this principle by disallowing the excuse of inconvenience in an employee transfer case. Burton v. United States, supra; Madison v. United States, supra.
Thus, no illegal reduction in rank occurred in this case. Plaintiff’s reassignment constituted a valid lateral transfer for the efficiency of the service.
Plaintiff’s second major contention is that the associate administrator of NASA who ordered his reassignment was unauthorized to do so because NASA regulations empowered him to direct transfers only as a disciplinary measure, which plaintiff’s reassignment purportedly was not. In its review of plaintiff’s appeal, 'however, the CSC considered the merits of this contention, and concluded that the NASA regulation in question did not fully govern the associate administrator’s authority to order reassignment but that he also exercised non-disciplinary powers of this nature. Consequently, the Schmidt requirement of Civil Service review of a frima facie allegation of illegality has been satisfied in this instance. Because the Civil Service determination is supported by substantial evidence, we find no reason to depart from it. Grover v. United States, 200 Ct. Cl. 337 (1973); Kingdon v. United States, supra at 522.
For the above reasons, we conclude the reassignment in question was in all respects lawful. As a result, plaintiff’s removal from the competitive Civil Service for refusal to accept the ordered transfer was supported by substantial evidence and not arbitrary, capricious, or grossly erroneous. *291 Kingdon v. United States, supra; Madison v. United States, supra.
Accordingly, defendant’s motion for summary judgment is granted; plaintiff’s motion for summary judgment is denied; and the petition is dismissed.

 In the same letter, Administrator Fletcher Included the following renewed offer: “As we are still desirous to retain the benefit of your shills within the NASA organization, I do wish to once again offer you the opportunity to accept the reassignment to the Lewis Research Center. This offer is open for your consideration for 30 days from the date of this letter and your written acceptance should be directed to Mr. Jackson if you accept.”

 The hearing examiner’s decision was based on chapter 752-1, subchapter S2-2d,- of the Federal Personnel Manual, which provides in part: “Basically, [the term rank] means an employee’s relative standing in the agency’s organizational structure. * * *”